### ANDERSON *v.* DUNDEE STATE BANK.

*(Supreme Court, Special Term, Yates County.  April, 1892.)*

NEGOTIABLE INSTRUMENTS—PROOF OF INDORSER'S SIGNATURE.

One claiming to be P. fraudulently and without consideration procured from de
fendant a draft payable to P.  The cashier of plaintiff, to which it was indorsed,
testified that it was presented by one introduced to him as B., and that he saw
the latter indorse it.  A witness for plaintiff testified that the indorsements of
B. and P. were in the same handwriting.  There was no evidence that the per-
son who represented himself as P. indorsed the name of P., or that P. and B. were
the same person.  *Held,* that plaintiff failed to prove the genuineness of P.'s in-
dorsement, and could not recover.

Action by Crittendon C. H. Anderson against the Dundee State Bank.
Judgment for defendant.  Plaintiff moves for a new trial.  Denied.

*W. T. Morris* and *John Gillette,* for plaintiff.  *Briggs & Sunderlin* and
*Mr. Leary,* for defendant.

DAVY, J.  This action is brought to recover the sum of $300 upon a bill
of exchange issued by the defendant upon the Importers' & Traders' National
Bank, of New York city, payable to the order of John C. Peck.  The draft
was obtained by fraud and without consideration.  The cause was tried be-
fore a jury, and resulted in a verdict for the defendant by direction of the
court.  The plaintiff now moves for a new trial upon the minutes.  It ap-
pears from the evidence taken upon the trial that on the 9th day of February,
1885, a man called at the defendant's banking house, in the village of Dun-
dee, and requested the cashier of said bank to cash a check drawn on the
Geneva National Bank, of New York, for $965, which purported to have been
made and signed by Ben. F. Reed, and payable to the order of Jones & Ayers,
bearing date February 7, 1885.  Upon the back of the check were the names
Jones & Ayers and John C. Peck.  The man who presented the check stated
to the cashier that his name was John C. Peck, and that he desired from the
proceeds of the check a draft on New York for $300, payable to the order of
John C. Peck, and the balance of the check he desired in currency.  The
cashier of the bank, who supposed he was familiar with the firm signature of
Jones & Ayers, and believing the indorsement on the check to be genuine,
and knowing the firm to be good, cashed the check by giving to the applicant
the draft in question and $665 in currency.  The check proved to be a forgery,
and was utterly worthless.  The fact that the draft was obtained by fraud
was conceded, or rather not disputed, by the plaintiff, upon the trial.  The
principal questions to be considered, therefore, are, does the evidence show that
the plaintiff obtained a good title to the draft, and did he obtain it in the
usual course of business and for a valuable consideration, without notice of
the fraudulent circumstances by which it was obtained?  If he did, he is en-
titled to recover the amount of the draft.  A holder of negotiable paper, who
takes it before maturity for a valuable consideration, in the usual course of
business, without knowledge of facts which impeach its validity as between
antecedent parties, is deemed a *bona fide* holder.  If the plaintiff, however,
before he purchased the draft, knew, or as an ordinarily prudent man had rea-
son to believe from circumstances brought to his knowledge, that the defend-
ant had, or claimed to have, a defense to said draft, then the plaintiff is not
an innocent holder.  When the defendant proved upon the trial that the draft
was procured by fraud and without consideration, it then devolved upon the
plaintiff to prove that he had a good title to the draft, and that he took it in
the usual course of business for a valuable consideration, and without knowl-
edge of any of the facts which impeached its validity.  *Bank* v. *Diefendorf*
123 N. Y. 201, 25 N. E. Rep. 402.

If all of these points had been disputed upon the trial, then the case, no doubt, should have been submitted to the jury. There is one material point, however, which was not denied or disputed by the plaintiff, and which, in my judgment, is fatal to his right to recover. Mr. David Hoyt, the cashier of the Monroe County Savings Bank, of Rochester, who was called by the plaintiff as an expert witness, testified that the signatures of John C. Peck upon the back of the forged check and the draft were in the handwriting of the same person. Upon the cross-examination he was asked the question whether the signature James Bell upon the draft was written by the same person that wrote the name of John C. Peck upon the draft, and he answered that it was. This fact was not disputed or denied by the plaintiff. There is no evidence in the case that James Bell is the same person who obtained the draft from the defendant, and represented to the cashier of the bank that his name was John C. Peck. There is no evidence in the case that the man who claimed to be John C. Peck, and who obtained the draft from the defendant, ever indorsed the name John C. Peck to the forged check or the draft. But it does appear from the undisputed evidence in the case that the name of John C. Peck upon the draft was forged by James Bell. The plaintiff's cashier testified that James Bell was introduced to him by a citizen of Carlonville, and that he saw Bell sign his name upon the draft; that he did not know who John C. Peck was, and did not know his signature. It is a rule of law well settled that, to give title to the holder of a negotiable instrument or bill of exchange payable to the order of a person named therein, it must have the genuine indorsement of the payee upon it. In an action by the holder against the maker of a bill or note payable to order, the holder must prove the signature of the payee to be genuine. Bacon, in laying down the rule, says the money is to be paid to him in whose favor the bill is drawn, or the indorser in case it be indorsed over, in which case it seems the drawer and the drawee must take notice at their peril. 6 Bac. Abr. 788. Again, he says: "A transfer by indorsement can only be made by him who has a right to make it, and that is the payee."

When the cashier of the Dundee State Bank signed and delivered the draft in question to the man who said his name was John C. Peck, it undertook, in the event of its dishonor, to pay that sum to John C. Peck or his indorsees. An equally familiar rule of mercantile law is any holder of that bill must show the genuine indorsement of John C. Peck thereon before he can recover. The indorsement of the payee must be shown to be genuine, because without that it cannot appear that the payee made the order, upon the existence of which depends the title of the holder to the draft. The rule is thoroughly established that a forged indorsement does not pass title to commercial paper negotiable only by indorsement, and payment by the drawer or drawee of a forged draft, although purchased in good faith, is no payment at all as to the true owner. *Graves* v. *Bank*, 17 N. Y. 205; *Citizens' Nat. Bank of Davenport* v. *Importers' & Traders' Bank*, 119 N. Y. 200, 23 N. E. Rep. 540. It was the plaintiff's duty to see to it that the payee had indorsed the draft, and, if he neglected to do so, he took the draft at his own risk. *Corn Exchange Bank* v. *Nassau Bank*, 91 N. Y. 74, 81. In other words, the plaintiff, when he purchased the draft of James Bell, was bound to ascertain that the signature of John C. Peck thereon was that of the genuine payee, and it is no excuse that he purchased the draft in good faith and for value upon the indorsement of a person bearing the same name as the payee. The rule that the payee must first indorse a note is founded upon the fact that he alone can transfer it and give title to the purchaser. It is contended, however, by the learned counsel for the plaintiff, that John C. Peck, the payee, was a fictitious person, and therefore his indorsement was unnecessary to pass the legal title to the plaintiff.

In an action brought by the holder on a draft against the maker where it is payable to order, in order to dispense with the necessity of proving the indorsement of the payee to be genuine on the ground that the payee is a fictitious person, the plaintiff must show: *First*, that he knew the payee was a fictitious person at the time he made the draft: *second*, that he indorsed the name of a fictitious payee upon the draft, and then transferred it to a *bona fide* holder for value. Or, if the payee be a real person, the plaintiff must show: *First*, that the indorsement of the payee was forged by the maker; *second*, that the maker negotiated the draft with such forged indorsement upon it to a *bona fide* holder for value. The law in such cases estops the maker of the draft, who has himself made it payable to a fictitious person and has indorsed the name of his fiction upon it, or who has made it payable to a real person, and forged the name of the payee upon it, and then transferred it over to a *bona fide* holder for value, from denying his liability on such a draft; and it has been held that it may be sued and declared upon by a *bona fide* holder for value as payable to bearer. *Mayor, etc.,* v. *Bank of England*, 21 Q. B. Div. 160; *Bennett* v. *Farnell*, 1 Camp. 130; *Plets* v. *Johnson*, 3 Hill, 112; *Minet* v. *Gibson*, 3 Term R. 482; *Shipman* v. *Bank*, 126 N. Y. 330, 27 N. E. Rep. 371. It will be seen, therefore, from a close examination of these cases, that bills of exchange and promissory notes indorsed by a fictitious payee can only be enforced against the maker when he puts them in circulation with knowledge that the name of the payee is a fictitious person. It is the knowledge and intent of the payee when he negotiates the paper that determines its validity and his liability. The Revised Statutes of this state provide that when notes or bills of exchange are made payable to the order of the maker thereof, or to the order of a fictitious person, if negotiated by the maker, they have the same effect and are of the same validity, as against the maker and all persons having knowledge of the facts, as if payable to the bearer. 1 Rev. St. p. 768, § 5; *Bank* v. *Alley*, 79 N. Y. 536; *Maniort* v. *Roberts*, 4 E. D. Smith, 83. It is quite clear that under the statute above referred to notes or bills payable to the order of a fictitious person, in order to be treated as notes and bills made payable to bearer, must be negotiated by the maker with knowledge of those facts. Judge O'BRIEN, in the case of *Shipman* v. *Bank, supra*, in construing the above statute, says that paper made payable to the order of a fictitious person, and negotiated by the maker, has the same validity, as against the maker and all persons having knowledge of the facts, as if payable to bearer. He also says: "We are of the opinion that this rule applies only to paper put into circulation by the maker with knowledge that the name of the payee does not represent a real person. The maker's intention is the controlling consideration which determines the character of such paper. It cannot be treated as payable to bearer unless the maker knew that the payee was a fictitious person, and actually intended to make the paper payable to a fictitious person." Daniel, in his work on Negotiable Instruments, (volume 1, § 140,) says that if a draft or note is payable to some person known at the time to exist, and present to the mind of the drawer when he made the draft as the party to whose order it was to be paid, the genuine indorsement of such payee is necessary in order to entitle the holder to recover thereon. It has been repeatedly held by the courts of this state that the drawer of a draft is not bound by the payment made by the payee upon a forged indorsement. The payee was bound before payment to ascertain the genuineness of the indorsement. *Welsh* v. *Bank*, 73 N. Y. 424; *Vagliano* v. *Bank*, 22 Q. B. Div. 103. The indorsement by James Bell of the name of John C. Peck upon the draft, with intent to deceive the plaintiff, and to put the draft in circulation, constituted the crime of forgery, even though John C. Peck were a fictitious payee. The rules of commercial law governing negotiable paper may not always work complete justice, but a

regard for the confidence and security which should govern in mercantile transactions of this kind demands a rigid application when a proper case arises.

The Dundee State Bank executed and delivered the bill of exchange in question to John C. Peck, and made it payable to his order. It did not issue or intend to issue the draft to a fictitious person or to a fictitious John C. Peck; and to hold that the payee of the draft, John C. Peck, was a fictitious person, and that the defendant is estopped from disputing that fact, and must pay the draft because it happens to fall into the hands of a *bona fide* purchaser for value, is to go beyond any authority I have been able to discover or any which I believe to exist. Peck was the applicant for the draft, and he was the person to whose order it was made payable. The cashier of the bank recognized him as such person, and whatever may have been the reserved, concealed, and fraudulent intention of the applicant who claimed to be John C. Peck are wholly immaterial. There can be no doubt that the cashier of the Dundee State Bank had no other idea than that the bill would be paid to the order of the John C. Peck to whom he delivered the draft. To hold under these circumstances that John C. Peck was a fictitious person, and that the draft may be negotiated, and recovered upon as a note or bill payable to bearer, would be a most dangerous rule to adopt, and one tending to destroy the chief value of bills of exchange and negotiable paper. As an example, suppose the person representing himself to the Dundee State Bank as John C. Peck was an honest man, and that was his genuine name, and that he applied in good faith for a draft payable to his order with a view of purchasing groceries in the city of New York; suppose further that he delivered it to James Bell, who was his confidential clerk or cashier, for safe-keeping until such time as he might desire to use it, and that James Bell should forge the name of John C. Peck, and pass it to the plaintiff,—would the learned counsel for the plaintiff contend that the drawee or drawer of the draft could be compelled to pay it until it had received the genuine indorsement of the payee? Certainly not. The presumption of law is that the draft was drawn with the intent of vesting the title in John C. Peck, and in him alone; consequently it is only through him that a title could be derived, and only by title given by him and evidenced by his indorsement that a valid payment could be made, it appearing from the evidence in this case that the name of John C. Peck upon the draft was forged by James Bell. The loss, therefore, resulting from this fraud, the plaintiff must sustain, and against its perpetrator must seek relief. The motion for a new trial is denied, with $10 costs to the defendant.