MARKS & CO. *v.* BRIDGES & SON.

(*Nashville.*    February 16, 1901.)

1. WAREHOUSE RECEIPT.    *What is not.*

A receipt signed jointly by the proprietor of a bonded ware-
house and the government storekeeper and issued to the
purchaser of whiskey on storage in the warehouse and provid-
ing for delivery of same upon return and surrender of the
receipt, properly indorsed, and payment of government tax and
storage charges, is not a technical warehouse receipt within
the meaning of the statute on that subject and does not pos-
sess the attributes conferred by the statute, although it
recites that it "is given in deference to the Tennesse ware-
house laws."

Act construed: Acts 1879, Ch. 236.

Code construed : §§ 3601–3605 (S.); §§ 2792–2796 (M. & V.).

Cases cited : Stewart *v.* Ins. Co., 9 Lea., 109.

2. INNOCENT HOLDER.    *Of bonded warehouse receipt.*

The holder of a government bonded warehouse receipt, except
he be an innocent holder for value, cannot maintain an action
against the proprietor of the bonded warehouse for conversion
of the whiskey therein described where the latter has, by
appropriate legal proceedings, subjected it to public sale for
the purchase price and become the purchaser thereof at such
sale.  It is held that the holder of the receipts, *involved in*
this case, was not, upon the facts set out in the opinion, an
innocent holder for value.

---

FROM  ROBERTSON.

---

Appeal   in   error   from   Circuit   Court   of   Robert-
son   County.   A.   H.   MUNFORD,   J.

Marks & Co. *v.* Bridges & Son.

Louis T. Cobbs for Marks & Co.

A. E. Garner for Bridges & Son.

Wilkes, J. This is an action commenced before a Justice of the Peace for the conversion of fifteen barrels of whisky.

On appeal to the Circuit Court it was tried before the Judge without a jury, and there was judgment for the defendant, and plaintiffs have appealed and assigned errors.

It appears that on March 5, 1892, J. C. Marks & Co. bought twenty-five barrels of whisky from Jno. R. Bridges & Son, for which they gave their note for $617.54, due at sixty days. The whisky at the time was stored in the United States bonded warehouse of the sellers, and the government tax thereon had not been paid. The purchase note not having been paid when due, Bridges & Son filed an attachment bill to collect it. The whisky was attached May 18, 1892, and was sold January 25, 1893, and bought by Bridges & Son for $678.12, and their debt was satisfied as well as the costs.

When the whisky was stored in this bonded warehouse, certificates were issued for it in five-barrel lots. These certificates were in substance as follows:

"Received from J. R. Bridges & Son on storage in my United States bonded warehouse, at Distillery No. 83, located near Springfield, Tenn.,

in the Fifth District of Tennessee, the following described whisky for account and subject to the risk and order of J. C. Marks & Co., deliverable only on return and surrender of this receipt properly indorsed and payment of government tax and storage charges. This receipt is given in deference to the Tennessee warehouse laws as well as the laws of the United States. Loss òr damage by fire, elements, shrinkage or natural decay at the owner's risk.          Signed,

"THOMAS WATERS, *U. S. Storekeeper.*

"J. R. BRIDGES & SON, *Proprietors.*"
"Indorsed:

"J. C. MARKS & Co.
"F. V. EVANS & Co."

It appears that three of these certificates or receipts went into the hands of the Jefferson County Savings Bank, at Birmingham, Ala., in April, 1892. It is explained by the president of that bank that they were taken as collateral for a loan made to the firm of J. C. Marks & Co. by the bank; that Marks & Co. failed, and were attached in Alabama, and the bank sold these collaterals to F. V. Evans & Co., in December, 1893, at the price or rate of forty-two cents per gallon for the whisky represented by them. No notice was given to Jno. R. Bridges & Son of any of these matters until after they had sold the whisky under their attachment proceeding, when

a demand was made for the whisky on behalf of F. V. Evans & Co., and it was refused upon the ground that Bridges & Son had already sold it and bought it in for their debt under the attachment proceeding. This suit was then brought by Evans & Co. in their own right, and by Marks & Co., for use of Evans & Co., against Bridges & Son, and is based upon the idea that after issuing their receipts, which are claimed to be the same as warehouse receipts, they converted the whisky to their own use. The case turns upon the effect to be given to these receipts or certificates, and to the rights which Evans & Co. acquired under their purchase from the bank.

In the case of *Tolly and Cannon* v. *F. M. Vanden & Co.,* from the Chancery Court of Lincoln County, decided by this Court several terms since (oral opinion), this Court passed upon the character and effect to be given to receipts exactly similar to these in every material respect. In that case the warehouseman had retained a lien for the unpaid purchase money, and this fact was recited in the face of the receipts or certificates. This Court held that such certificates could not be regarded as the usual statutory warehouse receipts, and are not governed by our statute of 1879, Chapter 236 (Shannon, § 3601), because such warehouse was in the joint possession of the owner of the warehouse and the government official; that such receipts are not negotiable as

provided by that Act, nor do they vest in the transferee the absolute ownership of the property as provided by that Act. Shan.; § 3605. Still they were assignable (*Stewart, Gwynne & Co.* v. *Ins. Co.*), 9 Lea, 109, and all other questions aside, the transferee would have the right to apply for and receive the property on payment of government tax and storage charges. It was held that the lien attempted to be retained was indefinite, and not set out with sufficient particularity of detail to make it effective to hold the property or give notice to a transferee for value.

The Court in that case also passed upon the effect which must be given to the statement in the receipt that it was issued in deference to the Tennessee warehouse laws as well as the revenue laws of the United States.

The Court was of the opinion that the intent of the statement was to make the receipts negotiable under the Tennessee laws, and that they should circulate as bills of exchange or promissory notes, and have the same effect and virtue as warehouse receipts; that the intention of the warehouse keeper was to enable the parties to negotiate them as though they were statutory warehouse receipts. Stress was laid in that case upon the fact that the bank was an innocent holder for full value of the certificates, and that they had been regularly transferred to it, and this being plainly apparent from the record, the bank

was allowed to recover upon the certificates, though not occupying the status of statutory warehouse receipts.

If in this case the purchaser of these certificates can be considered as holder in good faith, and for a full consideration, then it would be identical with that of *Tolly & Cannon* v. *Vanden & Co.,* and the plaintiffs would be entitled to recover. But upon this feature of the case, the record is not at all satisfactory. It appears that the bank took them as collateral. This of itself would not prevent it from being an innocent holder, but the president of the bank, under a very searching cross-examination, fails and refuses to state the particulars of the transactions by which the bank became the holder of the certificates.

The bank president, on cross-examination, was asked when he got the receipts; how he got them; if they were bought or taken as collateral, or for cash loaned, or to secure a pre-existing debt, or in renewal of another note, and to state the facts fully and honestly.

The only answer given to this searching question was a general one that the bank took them as collateral for cash loaned at the time the receipts came into the hands of the bank.

He further says the bank has no entry of purchase of the receipts, and none of the sale

22 P—35

of them on its books. The only entry it has is of a whole lot of whisky certificates (something like two hundred barrels) sold on the same day to various parties. It was impossible to obtain from him information as to what amount the bank had loaned upon the receipts, as he would only state in a general way that the bank loaned money upon them as collateral.

When the bank sold the receipts it declined to indorse them, and they were not at any time indorsed by it. This, no doubt, accounts for the fact that the suit in this case is brought in the name of Marks & Co., for the use of Evans & Co., and also in the name of Evans & Co. It is probable that the trial Judge looked with distrust upon this feature of the case, and did not consider the purchasers as holders in good faith and for value, and that the bank did not occupy such a position. In this view of the case there is evidence to support the verdict and judgment of the Court below. The statute, Shannon, § 3605, lays stress upon the feature that the transfer of such receipts must be *bona fide* and for value received.

We are of opinion the plaintiffs have not made out such a clear case of legal right to this whisky as must prevail over the strong equities of the defendants. The defendants, by legal process against Marks & Co, as nonresidents, proceeded to sell the whisky immediately after their

note fell due, and bought it in at full value, and no notice was given of the claims of any one else upon the whisky until two years thereafter, when this suit was brought. On the other hand, the Jefferson County Bank makes but a weak showing of good faith in its title and claim to these receipts, and fails to impress the Court with its good faith in connection with them. Nor do the purchasers, Evans & Co., impress the Court with their good faith in the transactions. They profess to have bought the certificates from the bank without requiring any indorsement from it to protect themselves. They made no inquiry as to whether the whisky was still in the warehouse, although from the lapse of time it was probable the whisky might have been sold to pay the government tax, if for no other purpose. They never saw the whisky, nor tested its quality, and although they bought, as they profess, in 1893, never applied for the whisky, and gave no notice of their claim for it until about two years thereafter. The Court is strongly impressed that there was collusion between the bank, the defendants, Evans & Co., and the failing debtors, Marks & Co., to realize upon these certificates after the failure of Marks & Co., and when from all the circumstances they must have been affected with notice of the defendants' equities, and could not have exercised that good faith necessary to recover

from the defendants for the conversion of this property.

An assignment is made to the admission of testimony to show that Bridges & Son did not keep the usual warehouse, but that the whisky was stored in a government bonded warehouse. We think this evidence was competent. In addition, all the facts that were material on this feature of the case appeared from the face of the receipts themselves, which showed that the whisky was stored in a government warehouse, and the receipts are executed by the defendants in connection with the government storekeeper.

We see no error in the judgment of the Court below, and it is affirmed with costs.