Bank v. Chatfield.

NATIONAL BANK OF COMMERCE *et al. v.* CHATFIELD, WOODS & CO.

*(Jackson.* April Term, 1907.)

1. **EVIDENCE.** Sufficient to sustain inference of fraud in the purchase of goods.

   In an action of replevin by the seller of goods to recover the same, the evidence stated is considered sufficient to warrant the jury in inferring that the goods were purchased through fraud on the part of the purchaser.

2. **WAREHOUSE RECEIPTS.** Negotiable; but holder must show that he was a bona fide purchaser where goods were procured by fraud.

   While warehouse receipts are negotiable by indorsement and delivery, in the same manner as bills of exchange and promissory notes, yet where it is shown that the goods represented by a warehouse receipt were purchased through fraud by an insolvent purchaser, the burden rests on the holder of the receipt to show that he was a *bona fide* purchaser and holder. (*Post, pp.* 485-494.)

   Code cited and construed:   Sec. 3605 (S.). sec. 2796 (M. & V.).

   Acts cited and construed:   Acts 1879, ch. 236, sec. 5.

   Cases cited and approved:   Stewart v. Insurance Co., 9 Lea, 104, 109; Bank v. Haselton, 15 Lea, 216, 239; Marks v. Bridges, 106 Tenn., 540; Bank v. Green, 43 N. Y., 300; Anderson v. Bank, 47 N. Y. St. Rep., 448; Vallett v. Parker, 6 Wend. (N. Y.), 615; Nickerson v. Ruger, 76 N. Y., 282; Bank v. Diefendorf, 123 N. Y., 191; McCammon v. Shantz, 49 App. Div., 462; Bank v. Weston, 162 N. Y., 118; Bank v. Weston, 172 N. Y., 254; Bank v. Richter, 55 Minn., 365; Hallock v. Young, 72 N. H., 420; Bank v. Burgwyn, 108 N. C., 62; Bank v. Burgwyn, 110 N. C., 267; Pugh v. Grant, 86 N. C., 39.

   118 Tenn—31

Bank v. Chatfield.

3. **CHARGE OF COURT.** Refusal of request substantially charged in the general charge is not error.

There is no error in refusing a requested charge, where the substance of the instruction requested is contained in the general charge. (*Post, pp.* 494.)

4. **EVIDENCES OF TITLE.** Burden on purchaser to show bona fides, where goods were obtained by fraud.

The claimant of goods as the indorsee of the evidences thereof, where the party under whom he claims title obtained the goods through fraud, must affirmatively show that he was a *bona fide* purchaser of said evidences of the goods, whether the same be a bill of lading or a warehouse receipt. (*Post, pp.* 494, 495.)

Cases cited and approved: Arendale v. Morgan, 5 Sneed, 703; Neilson v. Weber, 107 Tenn., 161, 164; Galatian v. Erwin, Hopk. Chy. (N. Y.), 48.

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby County.—J. P. YOUNG, Judge.

MCFARLAND & CANADA, for Bank et al.

W. A. PERCY, for Chatfield et al.

Mr. Justice NEIL delivered the opinion of the Court.

This action was brought in the circuit court of Shelby county to replevin one car load of paper bags shipped by the defendants in error to the Sledge-Wells Company,

a concern formerly doing business in Memphis, this
State. It appears from the record that on the 21st
of January, 1905, the defendants in error sold to the
Sledge-Wells Company a car load of paper bags. The
goods were shipped during the latter part of February
of the same year, and arrived in Memphis over the
Southern Railroad in the early days of March. When
the goods arrived, the Sledge-Wells Company directed
that they should be transferred to the cars of the Louis-
ville & Nashville Railroad Company, that had connec-
tions with the Patterson Transfer Company warehouse,
in order that they might be stored in that warehouse.
The goods did not arrive at the warehouse until the
22d of March. On that day they were received by the
Patterson Transfer Company, and the warehouse re-
ceipt was issued to the Sledge-Wells Company, and im-
mediately that company, late in the afternoon of the
same day, near the close, or after the close, of banking
hours, turned this receipt over to the National Bank
of Commerce to secure a note of $9,100, which had been
made by the said company on the 6th of March, 1905.
The note was already secured by various collaterals
amounting to $10,430; but there is evidence that when
this note was executed the Sledge-Wells Company prom-
ised to attach the above-mentioned warehouse receipt
when it should obtain it.

On the next day after the warehouse receipt was thus
transferred the Sledge-Wells Company made an assign-

ment. No officer or employee of the bank testified in the case.

It is very uncertain, from the testimony of Mr. Wells, of the Sledge-Wells Company, whether the note for $9,100 was given for a pre-existing debt owing to the bank, and renewed, or whether it was in part a pre-existing debt and in part a new loan. He testifies that the Sledge-Wells Company received credit on the books of the bank for $9,100; but there is no evidence that any of this money was ever drawn from the bank, or paid to any other person than the bank.

There is evidence tending to show that at the time the goods were ordered, although the Sledge-Wells Company was in the full tide of business, yet it was really unsound and likely to fail at any time. Indeed, the company failed two months thereafter and was wound up in bankruptcy, with the result that the assets paid only eighteen cents on the dollar of the debts of the firm. It does not appear that any new burdens were imposed upon the company between the date of the ordering of the goods and the failure just referred to. During the whole period referred to it was seriously entangled in litigation, and when a judgment of only $1,800 was rendered against it, and a bond was necessary to prosecute an appeal, it was unable to make the bond, but was compelled to rely upon staving off an entry of the judgment as long as it could, and then upon the thirty-day interval that usually elapses between the date of entry of judgment and the issuance

of an execution. The date of entry of the judgment does not appear from the record, but we infer from what is said in respect thereof that it was some twenty or thirty days before the failure. The senior member of the concern, who had been indorsing for the company, refused to indorse further. This seems to have been the immediate occasion for the failure. However, taking into consideration all the facts just stated, and especially in view of the smallness of the assets, we think there was evidence from which fraud might have been inferred by the jury at the time the goods were purchased.

When the goods were received into the warehouse of the Patterson Transfer Company, the Sledge-Wells Company was insolvent and on the brink of failure. In other words, there was testimony tending to show that the order for the goods was fraudulent, and that the receiving of the goods and turning them over to the Patterson Transfer Company, and the transfer of the receipt to the bank, was fraudulent, so far as concerned the attitude, conduct, and purposes of the Sledge-Wells Company.

The trial below resulted in a judgment in favor of the defendants in error for the goods replevined, together with one dollar damages and the costs of the cause. From this judgment the plaintiffs in error have appealed to this court, and here assign errors.

Several errors are assigned, but the only one really pressed in argument was based on the following instruction, which the circuit judge gave to the jury, viz.:

"If the jury find from the evidence that the purchase of the goods in controversy by the Sledge-Wells Company was fraudulent, but that the goods had been delivered to the Bank of Commerce by the Sledge-Wells Company before the writ of replevin was sued out, then the burden of proof is on the bank to show that it. is a *bona fide* holder or purchaser of the goods for value without notice of the fraud in the title of Sledge-Wells Company."

It is insisted by the plaintiffs in error that this charge was erroneous. The contention is based on the provisions of section 3605, Shannon's Code (Acts 1879, p. 278, c. 236, sec. 5). The section of the Code reads as follows:

"All receipts issued by any warehouseman for cotton, tobacco, grain, hemp, whisky, or any kind of produce, wares, merchandise or any description of personal property, shall be negotiable by written indorsement thereon and delivery, in the same manner and to the same extent as bills of exchange and promissory notes; and any person or persons to whom the same may be transferred *bona fide* and for value received shall be deemed and taken to be absolute owner of the produce, wares, merchandise, or other personal property therein specified; and no clause, condition, or limitation, either written or printed, in said receipt, shall be held to limit their negotiability or to affect the right of the holder or holders thereof."

Prior to the passage of the act referred to warehouse

receipts were not considered negotiable instruments in this State. It was said, however, that they stood upon grounds applicable to that class of paper. *Stewart, Gwynne & Co.* v. *Insurance Co.,* 9 Lea, 104, 109. The case of *Bank of Rome* v. *Haselton,* 15 Lea, 216, was decided after the passage of the above-quoted statute; but in that case it appeared without controversy that the holders were bona fide holders (15 Lea, 239), and the question to be considered in the present case was not presented.

In *Marks & Co.* v. *Bridges & Son,* 106 Tenn., 540, 62 S. W., 153, the subject was incidentally considered. In that case the court said that if the purchaser of the warehouse receipts could be considered a holder in good faith and for a full consideration, he would be entitled to recover. But it was said upon this feature of the case that the record was not at all satisfactory; that the president of the bank to which the receipts had been assigned by the beneficiaries named therein, Marks & Co., under a very searching cross-examination, refused to state the particulars of the transaction by which the bank became the holder of the receipts in question; that he was asked when and how he got these papers, whether they were bought outright or were taken as collateral for cash loaned at the time, or for pre-existing debts, or in renewal of another note, and the only answer given was a general one that the bank took them as collateral for cash loaned at the time the receipts came into its hands, but that it was impossible to obtain

from the witness information as to what amount the bank had loaned upon the receipts; that he would only state in a general way that the bank loaned money upon them as collateral. It further appeared that when the bank sold the receipts to Evans & Co., parties to the suit in question, it declined to indorse them, and the suit was brought in the name of Marks & Co., for the use of Evans & Co., and also in the name of Evans & Co. Upon consideration of these facts the court said that the bank made but a mere showing of good faith, as likewise Evans & Co.; that it was strongly impressed with the view that the bank, Evans & Co., and the failing debtors, Marks & Co., were in collusion for the protection of the latter; and the result was adverse to all of them.

The foregoing are all of the cases we have in this State upon the subject of warehouse receipts.

More particularly, the contention of the plaintiffs in error is that warehouse receipts, under the section of Shannon's Code above quoted, stand upon the footing of negotiable paper, and the possession of such paper is *prima facie* evidence that it was received by the holder *bona fide,* and that the burden of proof is upon any one who seeks to impeach such paper in the hands of the holder; and for this proposition we are referred to section 812, Daniel on Negotiable Instruments.

The predicate of this proposition, as applied to the present case, is that warehouse receipts stand on the footing of negotiable paper. We are of opinion that this

is a sound view of the matter, under a true construction of the section of Shannon's Code above quoted. Trying the matter, then, upon the principle applicable to negotiable paper, the question to be determined is whether the present controversy arises under the general rule, or under a well-recognized exception thereto. The rule and the exception are thus stated in section 1828, vol. 3, Elliott on Evidence, viz.:

"The owner of a negotiable instrument is presumed to have obtained it in good faith, for a valuable consideration, before maturity, and without knowledge of any of the defenses against the maker, and the burden is upon the defendant who sets up the contrary; and this presumption obtains in favor of one to whom the instrument is properly indorsed. The burden has been held to be upon the holder, however, to show that he is a *bona fide* purchaser, when fraud is shown in the execution, or when payment is proved; and all of these defenses may be proved by parol."

In 8 Cyc., after stating the general rule it is said:

"The presumption of good faith may be rebutted, like other presumptions. Thus, the presumption of good faith includes the presumption that the holder took the bill in the ordinary course of business, but the burden of proving good faith is shifted to the indorsee by proof that he paid for the paper much less than its face. So, evidence that the bill was lost or stolen shifts the burden of proving good faith, and throws it on the holder. . . . Evidence of illegality or fraud in the origin

Bank v. Chatfield.

or transfer of the paper throws on the holder the burden of proving his good faith, and if the holders are partners the good faith of all must be shown. . . . The burden of showing his good faith is on the holder, where the fraud proved by defendant is that of an agent on his principal, or of a partner on his firm. . . . The burden of proving that the holder is a purchaser for value is shifted to him on proof of duress of the drawer of the bill. In like manner evidence that the maker was sick and intoxicated at the time of making the note, that the bill was given for a particular purpose and has been diverted from that purpose, that the paper was only in escrow, or that it was given for a patent right, in disregard of statutory requirements, shifts the burden of showing good faith to the holder. . . . If . . . the original consideration is shown to have been illegal, the presumption is against the holder, and he must prove himself to be a purchaser for value." Id., 235-240.

We shall now refer to one or two cases. In *Canajoharie National Bank* v. *Diefendorf,* 123 N. Y., 191, 25 N. E., 402, 10 L. R. A., 676, after referring with approval to Daniel on Negotiable Instruments (2d Ed.), sec. 819, Chitty on Bills & Notes (12th Am. Ed.), sec. 643; *Vallett* v. *Parker,* 6 Wend. (N. Y.), 615; *First National Bank of Cortland* v. *Green,* 43 N. Y., 300, and *Nickerson* v. *Ruger,* 76 N. Y., 282, stating substantially the doctrine above announced, the court said:

"A sufficient number of authorities have been cited

to show the uniformity with which the cases in the highest courts of the State hold that, upon proof by the defendant that his obligations have been fraudulent or illegally obtained and put in circulation, the person seeking to recover upon them must show, not only that he bought before maturity and paid value, but also the circumstances under which he acquired the paper, with the view of enabling the jury to determine whether he acted in good faith or not. It makes no difference in the question presented whether the plaintiff pursued the orderly course of first presenting and proving his note, relying upon the presumption of *bona fides* which accompanies the possession of the paper, and delays making proof of the circumstances of his purchase until after the defendant gives evidence of his defense, or, as in this case, he makes the proof of such circumstances as part of his affirmative case. The burden of making out good faith is always upon the party asserting his title as a *bona fide* holder in a case where the proof shows that the paper has been fraudulently, feloniously, or illegally obtained from its maker or owner. Such a party makes out his title by presumptions, until it is impeached by evidence showing the paper had a fraudulent inception; and when this is done the plaintiff can no longer rest upon the presumption, but must show affirmatively his good faith."

This case has been cited with approval on the point just referred to in *Anderson* v. *Dundee State Bank*, 47 N. Y. St. Rep., 448, 20 N. Y. Supp., 511; *Bank of Mont-*

*real* v. *Richter,* 55 Minn., 365, 57 N. W., 61; *McCammon* v. *Shantz,* 49 App. Div., 462, 63 N. Y. Supp., 611; *Citizens' National Bank* v. *Weston,* 162 N. Y., 118, 56 N. E., 494; *Hallock* v. *Young,* 72 N. H., 420, 57 Atl., 236; *Second National Bank* v. *Weston,* 172 N. Y., 254, 64 N. E., 949.

In *Commercial Bank of Danville* v. *Burgwyn,* 110 N. C., 267, 14 S. E., 623, 17 L. R. A., 326, it is said:

"The defendants having pleaded that the notes sued upon were obtained by the fraudulent representations of the payees, and testimony having been introduced in support of such pleas, his honor was correct in holding that the *prima facie* case of the plaintiff indorsee was so far rebutted as to shift the burden of proof, and to make it necessary for it to show that it was a *bona fide* purchaser for value without notice. *Commercial Bank of Danville* v. *Burgwyn,* 108 N. C., 62, 12 S. E., 952, 23 Am. St. Rep., 49; *Pugh* v. *Grant,* 86 N. C., 39. When, however, the plaintiff responded by showing that it acquired the notes *bona fide,* for value, in the usual course of business, and while they were still current, the *prima facie* case of the plaintiff was restored, and, unless the circumstances under which the purchase was made were of such a character as to amount to constructive notice, the jury should have been instructed that the burden of proof was upon the defendants to establish knowledge on the part of the plaintiff at the time of its purchase of the impeaching

facts alleged in the answer.   Daniel on Neg. Inst., 819."

In a note to this case, as reported in 17 L. R. A., 328, the following proposition is laid down:

"If the party primarily liable proves fraud or illegality in the inception of the instrument, or if, from the circumstances, a strong presumption of fraud is raised, the holder must then show that he acquired *bona fide* for value under circumstances creating no presumption that he knew the facts which impeached its validity."

In support of this proposition very many authorities are cited, and we have no doubt of its correctness.

In the present case, while it does not appear that any fraud was practiced upon the Patterson Transfer Company by the Sledge-Wells Company, yet there is evidence that the Sledge-Wells Company, in depositing the goods with the Patterson Transfer Company and obtaining the receipts, intended to defraud the defendants in error of the property.   The receipts stood as representatives of the property and we are of opinion that fraud thus arising in the inception of the receipts would require the holder, upon such evidence being introduced, to show that he (or it) had obtained them *bona fide.*

We are of opinion, therefore, that the instruction complained of was correct.

The second assignment is overruled.   The portion of the charge objected to in this assignment consists of seven lines torn from the context, and cannot be correctly understood, except when restored to their proper

association.  When so restored, we see no error in them.

The third assignment is overruled, because the substance of the instruction therein referred to was sufficiently charged in the general charge.

The fourth assignment is insufficient in form, being of the same kind reprobated in *Felton* v. *Clarkson,* 103 Tenn., 457, 53 S. W., 733.

The fifth and last assignment is probably subject to the same objections as the fourth; but it goes further in the way of specifying grounds, and will be considered. The substance of this assignment is that there is testimony to the effect that, two weeks before the warehouse receipt was turned over to the bank, the Sledge-Wells Company turned over the bill of lading to the bank, with the understanding that the warehouse receipt was to be procured from the Patterson Transfer Company and put in the place of the bill of lading as soon as it could be procured; that when it was procured it was so deposited; that there is no evidence to show that the bank then knew from whom the goods had been procured by the Sledge-Wells Company, or that they were not paid for.

The assumption that this contention embraces matter entitling plaintiff in error to a reversal ignores, as we think, the fundamental principle governing the whole controversy; that is, if there was evidence from which the jury might infer fraud on the part of the Sledge-Wells Company, the burden of proof then shifted to the bank to show that it was a *bona fide* purchaser, whether

the transaction be considered from the standpoint of the bill of lading or from that of the warehouse receipt. The principle is general. *Neilson* v. *Weber,* 107 Tenn., 161, 164, 64 S. W., 20; *Galatian* v. *Erwin,* Hopk. Ch. (N. Y.), 48. One who has no title can convey none, but the owner may have so placed the property in the hands of another as to enable him to impose upon an innocent third party, and he is then estopped to insist upon his title (*Arendale* v. *Morgan,* 5 Sneed, 703); but the burden lies upon such third person to show that he is an innocent purchaser. There was enough evidence in the present case as to the fraudulent intent of Sledge-Wells Company, shown by insolvency, fraudulent representations, and questionable conduct (3 Elliott on Evidence, sec. 2624), to make it incumbent upon the bank to offer evidence to sustain its defense of innocent purchaser. No testimony on this head was offered by the bank, and it must abide the case made for it by the Sledge-Wells Company. The assignment must therefore be overruled.

It results there is no error in the judgment of the court below, and it must be affirmed.