F. B. NABORS et al. v. HAMILTON TRUST & SAVINGS BANK.
et al.

Eastern Section.   May 22, 1926.

No petition for Certiorari was filed.

1. **Bills and notes.   Evidence.   That some of notes are contested does not destroy good faith of holder.**
   In an action on a promissory note by holder in due course where the evidence showed that the holder bought a number of notes at a 10% discount and after he learned that the makers of some of the notes resisted payment, he never bought any more, held the fact that a number of the notes were resisted did not prove the party was not a holder in due course.

2. **Bills and notes.   The fact that a holder elects to sue a foreign maker instead of resident solvent endorser is not sufficient evidence to destroy the good faith of the holder.**
   In an action to recover on certain promissory notes where the holder might have sued a resident endorser whom he knew was solvent, but instead elected to sue the maker in a distant state of whom he knew nothing, held while these circumstances are suspicious, still they are not enough either alone or taken together, to discredit the party's claim of being an innocent holder of these notes for value.

3. **Bills and notes.   Evidence sufficient to show holder in due course.**
   Where the evidence of the holder showed that he had bought the note in suit together with other notes at a 10% discount on the face value and at the time knew nothing of the contract between the maker and the payee and no evidence was offered on the part of the defendant except that the holder lived in the same town with the payee and had elected to sue the maker in a distant state rather than the payee endorser, held evidence sufficient to show the holder was a holder in due course.

Appeal from Chancery Court, Hamilton County; Hon. W. B. Garvin, Chancellor.

Affirmed.

Murray & McCalla, of Chattanooga, for appellant.

Whitaker & Foust, of Chattanooga, for appellee.

THOMPSON, J.   Mr. O. E. Caudell, a resident of Evansville, Indiana, manufactured and sold carbide gas lighting and heating plants.   He carried on his business at Evansville under the name and style of American Generator Company.

Mr. F. B. Nabors and wife, Mrs. F. B. Nabors, were residents of Hamilton county, Tennessee.

On February 28, 1922, Mr. Caudell, through an agent at Chattanooga, sold them a carbide gas lighting and heating plant which was installed in their home.   In consideration therefor, they executed and delivered to him, or to his agent for him, their negotiable

promissory note for $307.25, dated February 28, 1922, and due and payable twelve months after date at the Mercantile Commercial Bank, Evansville, Indiana. Said note provided for attorneys' fees, and interest at eight per cent after maturity.

On May 20, 1922, Mr. Caudell endorsed and sold the note to H. A. Mann, a resident of Evansville, Indiana, and engaged in the real estate and investments business there.

Just prior to the maturity of the note, Mr. Mann put it in the North Side Bank of Evansville, which bank forwarded it to the Hamilton Trust & Savings Bank of Chattanooga, Tennessee, for collection.

On February 26, 1923, Nabors and wife filed the original bill in this cause. (In stating the case we treat the bill as including the amendments thereto). The bill was against the Hamilton Trust & Savings Bank, O. E. Caudell and H. A. Mann. Its object was to enjoin the collection of the note upon the ground that the carbide plant was worthless, that a fraud had been committed upon complainants in the sale to them of the plant and in the execution of the note therefor and that Mann was not a bona-fide purchaser of the note for value and without notice, etc.

The bank filed an answer stating that it simply held the note for collection and expressing a willingness to abide by the orders of the court.

Mr. Caudell made no defense to the bill, but Mann filed an answer and cross-bill denying that he had any knowledge or notice of any equities or defenses and alleging that he was a bona-fide purchaser for value and without notice, etc., and praying for a recovery on the note. To this cross-bill Nabors and wife filed an answer denying that Mann was a bona-fide purchaser, reiterating the allegations of fraud contained in their original bill, and alleging that Mann was not only not a bona-fide holder of the note, but was in collusion and conspiracy with, and was a stool pigeon of, Caudell for the purpose of collecting the note. The original bill had also alleged this latter fact.

Proof having been taken, the Chancellor found and decreed: "that the said H. A. Mann, cross-complainant in this cause, is the owner of said note by purchase and is an innocent purchaser for value in due course and before maturity. It is therefore ordered, adjudged and decreed by the court that the cross-complainant, H. A. Mann, have and recover of the defendants, F. B. Nabors, and his wife, Mrs. F. B. Nabors, the sum of $307.25, together with interest after maturity at the rate of eight per cent per annum, amounting to $52.-58, aggregating $359.83. And it further appearing to the court that said note provided for attorneys fees and the court being of the opinion that $50 would be a reasonable fee for Whitaker &

Foust for their services in this cause it is, therefore, ordered that the cross-complainant have and recover of the defendant in addition to said decree the sum of $50 as attorneys' fees. The costs of the cause will be paid by complainants and the surety on their cost bond, Murray & McCalla, for all of which, including the judgment, execution will issue.''

Nabors and wife have appealed to this court and have made fourteen assignments of error all of which, as we understand the argument in support thereof, question the holding that Mann was a holder in due course, etc., of the note. In this connection the facts are as follows:

As stated, Caudell manufactured the carbide plants at Evansville, Indiana. T. A. Morgan, whose residence and place of business was at Chattanooga, was Caudell's agent, and had charge of sales in the States of Tennessee, Georgia and Alabama. Mr. Morgan at the time he sold the plant to Nabors and wife, told them that it would light their home and supply heat for ironing, etc., would be serviceable in all respects and would require only 100 pounds of carbide a year. He told them that their note would not be negotiated but would be held until maturity and that if at that time the plant had proved unsatisfactory the note would be surrendered to them. That he or his principal would keep the plant in repair for a year and would furnish them a written guarantee to the above effect, which he failed to do.

The plant used 100 pounds of carbide in a few months. Nabors put in another 100 pounds and in a few weeks thereafter it ceased to operate entirely. He made demand upon Morgan and upon Mr. Caudell (who happened to be in Chattanooga at the time) to put the plant in working order, but both failed to do anything.

Without attempting to go fully into the details of complainants' proof, we think it shows that it made out a state of facts which would have constituted a clear defense to the note had Caudell sued them upon it. But we do not think that even complainants' proof, which the cross-complainant did not attempt to contradict, goes to the extent of showing that Caudell was manufacturing and selling a plant which was worthless, or that his entire business plan and operations were a fraud on all of his customers. In other words, the plant which complainants bought did not operate successfully, and some others which Caudell sold seem to have given trouble, and he failed to live up to his contract with complainants, but as stated, even complainants' proof fails to show that all of his plants were worthless or that all of his sales were frauds, and the record shows that he was still in business at the time the proof was taken more than two years after the execution of the note.

Mr. Mann had at one time lived in Tennessee, but for the last fifteen years had lived in Evansville, Indiana. He was engaged in the real estate and investment business at Evansville and as a part of his business he seems to have bought notes and other negotiable instruments, choses in action and securities. He had known Mr. Caudell for seven or eight years and lived about ten city blocks from where Caudell lived and about fifteen city blocks from Mr. Caudell's place of business or manufacturing plant. He had been in Caudell's plant about twenty times altogether and Caudell had been in his office four or five times. Mann was not connected with and had no interest in Caudell's business and had no intimate knowledge thereof. Nor did he have knowledge as to Caudell's financial standing or worth. He had no other transactions with him except the purchase of the notes hereinafter mentioned.

He bought the note involved in this suit on May 20, 1922, along with several others. Altogether he bought nineteen notes from Caudell, the first in December, 1921, and the last in 1922. The face value of these notes ranged between $260.25, and $307.25. He paid face value less ten per cent for all the notes which he bought. After he discovered that some of the makers of the notes which he bought from Caudell resisted payment on them he never bought any others. He became involved in litigation on six or seven of the nineteen notes which he bought, but he testifies that insofar as he had any knowledge of the carbide plants manufactured and sold by Caudell they had given splendid satisfaction, and we think his testimony shows that at the time he bought the note involved in this suit he had no knowledge or notice of any fraud, misrepresentations, breach of warranty or other defense or equity existing in this cause. In other words we think his testimony satisfactorily shows that he was a holder in due course of the note in question.

The complainants base their insistence that Mann was not a holder in due course upon the proposition that he and Caudell both lived in Evansville; that if Mann had bought the note in good faith he would have sued Caudell, who was solvent, in Evansville instead of coming to Tennessee to sue complainants about whom he knew nothing. And particularly do they base their insistence on the following testimony of Mrs. Nabors:

"Q. Who was to pay the freight? A. We were to pay the freight and plumber; that was the only money we were to be out until this year was out. From the time the plant was installed, in three weeks time, we received the first letter stating they would discount this plant (note) if we would pay cash, and I insisted on my husband paying it, thinking that we would save something; he said no, they had made a fair contract with him, he wanted to see if it was what they represented. In another week we received another letter, bringing it down to $225, if we would pay cash and

signed his name Mann, said he had bought these notes, he would discount them to $225, from $307.25, if we would pay and we did not answer any of these letters, because my husband said there was a crook in it, something wrong in it.

"Q. Have you got those letters now? A. I am not positive. I also have a letter from the plumber, that he said he would help me out on it if it didn't prove satisfactory.

"Q. These letters you speak of, were they both written by Mann or did they have his name signed to them? A. The first letter was supposed to be from the American Generator Company, stating they would discount these notes if we would pay cash. The last letter was from a man signing his name Mann, said he bought these notes and was willing to discount them to $225 if we would pay for them immediately.

"Q. If you find those letters will you file them as Exhibit 2 and 3? A. Yes, I think Mr. Nabors has brought these letters in."

### Cross-Examination.

"Q. How long was it after this plant was installed that you received the letter from Mr. Mann? A. Not more than a month at the most, just a little while, very short while.

"Q. And you didn't answer that letter at all? A. No sir.

"Q. Did you ever write any letter to Mr. Mann at all? A Not that I remember, don't think I did."

No such letters were filed in evidence.

The complainants insist that this testimony shows that immediately after buying the note Mr. Mann offered to discount it for $225, a loss of $51.52, and that this fact and the further fact that Mr. Mann, in his deposition which was taken upon interrogatories after Mrs. Nabors had testified, failed to mention the letter, coupled with the other facts above mentioned, prevented Mr. Mann from having carried the burden of proving that he bought the note in good faith, etc., and which burden complainants insist had been cast upon Mann by their proof of Caudell's fraud, under the holding in Bank v. Chatfield, 118 Tenn., 481; and Fox v. Cortner, 145 Tenn., 482, and particularly as Mann was the complainant in the cross-bill upon which the recovery was granted.

It is true that Mr. Mann's deposition was taken upon interrogatories after Mrs. Nabors had testified, and nothing was asked him about the letter and he made no mention of it. But the mere fact that he at one time offered to discount the note for $225 is not in and of itself any evidence of bad faith upon his part when he bought the note. It is only the *time* at which he made the offer that would indicate bad faith because such an offer made after it became apparent to him that litigation would ensue would be entirely consistent with

good faith on his part in the purchase of the note. And of course we cannot overlook the fact that the failure to question Mr. Mann may have been a mere oversight upon the part of his counsel. Neither can we overlook the fact that Mrs. Nabors may have been mistaken as to the time when she received the letter. Nor can we overlook the fact that neither she nor her husband answered the letter or filed it in evidence. And it does not seem to us that her uncorroborated evidence with respect to this letter is sufficient to overcome the strong and convincing testimony of Mr. Mann.

In the instant case Mr. Mann's testimony convinces us that he bought the note in good faith at a ten per cent discount, and he did not, at the time his deposition was taken, have sufficient knowledge and information as to the financial condition of Mr. Caudell to know whether a judgment against him would be collectable. And it seems to us that the following quotation from Bank v. Russell, 124 Tenn., 618, disposes of every insistence made in behalf of complainants:

''So that, we have here a case in which an Illinois bank ignores and overlooks a solvent indorser in its own town and forwards these notes for collection to a distant State, there to be sued on, and an effort made to realize their proceeds out of the maker. We also notice that, while the bank claimed to be an innocent purchaser, there was no profit in the transaction for it, except the bare six per cent interest which the notes drew. There appears the further circumstance that several weeks after the bank claims this transfer was made to it, Dorsey indicated that he was still the owner of the notes, in his correspondence with Russell.

''While we cannot understand all these circumstances nor why the bank should sue on these notes in Tennessee, with a solvent indorser at home—if there was no collusion between it and Dorsey—while these circumstances are suspicious, still they are not enough, either alone or taken together, to discredit the banks claim of being an innocent holder of these notes for value.''

Other cases are: Bank v. Butler, 5 Cates, 575; Bank v. Chapman, 14 Cates, 420; Nickey Bros. v. Lonsdale Mfg. Co., 149 Tenn., 1.

For the foregoing reasons, we are of the opinion that none of the assignments of error are well taken and the same are overruled.

A decree will be entered in favor of Mann and against Nabors and wife, as principals, and Newton Fryar, surety on the appeal bond, for the face of the note with eight per cent interest from maturity, and $50 attorneys' fee as allowed by the Chancellor, and the costs of the cause.

Portrum and Snodgrass, JJ., concur.